UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LAURA BRADSHAW,

            Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,

            Defendant.

CASE NO. 14-cv-05254 JRC

ORDER ON PLAINTIFF'S COMPLAINT

    This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S. Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United States Magistrate Judge, ECF No. 6). This matter has been fully briefed (*see* ECF Nos. 14, 15, 16).

    In this case, the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record to discount the opinion of an examining psychiatrist

ORDER ON PLAINTIFF'S COMPLAINT - 1

and failed to include in the RFC physical limitations identified by an examining physician. Therefore, this matter must be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the ALJ for further consideration.

BACKGROUND

Plaintiff, LAURA BRADSHAW, was born in 1972 and was 37 years old on the alleged date of disability onset of October 25, 2009 (*see* Tr. 52-53). Plaintiff completed high school and some college (Tr. 663). Plaintiff has work experience as a Certified Nursing Assistant, care giver, receptionist, cashier and hair stylist (Tr. 97-109). Plaintiff was fired from her last job as a Certified Nursing Assistant because she was sick too often (Tr. 676).

According to the ALJ, plaintiff has at least the severe impairments of "gastroparesis, depression, cannabis abuse, attention deficit hyperactivity disorder by history, fibromyalgia, and scoliosis (20 CFR 404.1520(c))" (Tr. 14).

At the time of the hearing, plaintiff was living in a mobile home on two acres with her husband and two teenage children (Tr. 663-64, 675).

PROCEDURAL HISTORY

Plaintiff's application for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) of the Social Security Act was denied initially and following reconsideration (*see* Tr. 26-27). Plaintiff's requested hearing was held before Administrative Law Judge Scott R. Morris ("the ALJ") on May 31, 2012 (*see* Tr. 652-93). On August 28, 2012, the ALJ issued a written decision in which the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr. 12-25).

In plaintiff's Opening Brief, plaintiff raises the following issues: (1) Whether or not the ALJ provided legitimate reasons for rejecting the medical opinion of Dr. Khaleeq; (2) Whether or not the ALJ's residual functional capacity ("RFC") finding is incomplete, as it did not include the need for hourly bathroom breaks as identified by Dr. Pfeiffer; (3) Whether or not the ALJ provided any germane reasons to reject plaintiff's husband statement; and (4) Whether or not the ALJ provided clear and convincing reasons for finding that plaintiff's testimony was not credible (*see* ECF No. 14, p. 2).

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

## DISCUSSION

(1) **Whether or not the ALJ provided specific and legitimate reasons for rejecting the medical opinion of Dr. Khaleeq**.

Plaintiff argues that the ALJ committed error in his evaluation of examining psychiatrist Dr. Erum Khaleeq M.D.'s report of March 12, 2011 (ECF No. 14, page 4 (*citing* Tr. 212-16)). The ALJ summarized Dr. Khaleeq's conclusion that plaintiff " . . . would have difficulty performing work activities on a consistent basis, would be unable to maintain regular attendance, and would be unable to interact with coworkers and the public" (Tr. 22, *summarizing* Tr. 215-16). The ALJ gave "little weight" to Dr. Khaleeq's

conclusion because he found that it was inconsistent with plaintiff's performance on the Mental Status Examination (Tr. 22). Instead, the ALJ gave great weight to the opinion of state agency non-examining psychologist, Dr. Leslie Postovoit, Ph.D., who evaluated plaintiff's mental examinations conducted by other doctors and concluded that plaintiff could work (Tr. 22). Dr. Postovoit's conclusion was affirmed by another nonexamining, reviewing state agency psychologist, Dr. Thomas Clifford, Ph.D. (Tr. 22).

"In order to discount the opinion of an examining physician in favor of the opinion of a nonexamining medical advisor, the ALJ must set forth specific, *legitimate* reasons that are supported by substantial evidence in the record." *Van Nguyen v. Chater*, 100 F.3d 1462, 1466 (9th Cir. 1996) (*citing Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)).

An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester, supra*, 81 F.3d at 830 (citations omitted); *see also* 20 C.F.R. § 404.1527(c)(1)("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). A nonexamining physician's or psychologist's opinion may not constitute substantial evidence by itself sufficient to justify the rejection of an opinion by an examining physician or psychologist. *Lester, supra*, 81 F.3d at 831 (citations omitted). However, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir. 2001) (*citing Magallanes v. Bowen*, 881 F.2d 747, 752 (9th Cir. 1989)).

Here, although Dr. Kaleeq's opinion is contradicted by opinions of reviewing state psychologists, who presumably reviewed the same MSE results as the ALJ, neither the state agency psychologists, nor the ALJ provided "specific, legitimate reasons" that were "supported by substantial evidence in the record" to support the conclusion that plaintiff would not have difficulties maintaining regular and consistent performance in a work setting (*see Van Nguyen, supra,* 100 F.3d at 1466). Although the ALJ noted that certain of the results in the MSE were consistent with his conclusions, there were other results that were not. For instance, when Dr. Khaleeq performed the MSE, plaintiff could only remember 1/3 words after five minutes and was inaccurate in her ability to perform serial 3's (Tr. 214). The ALJ, and the reviewing psychologists, failed to explain how these limitations in the MSE were consistent with their conclusion. Dr. Khaleeq relied on this MSE to support his conclusions. The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T. Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original). An examining psychiatrist is able to observe these subtleties, and a reviewing psychologist cannot. Furthermore, an examining psychiatrist is trained to use these observations to form an opinion, and an ALJ is not. Thus, in the

absence of any other substantive reasons for discounting the examining psychiatrist's conclusions, the ALJ committed legal error in rejecting that opinion.

As noted in *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) "[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong") (internal citations omitted)). The ALJ in this instance was attempting to evaluate the MSE and, in essence, substitute his analysis for the analysis of an examining psychiatrist.

Nor does the ALJ's reliance on the fill-in-the-blank evaluation by the State Agency reviewing psychologist cure this error. Reviewing psychologist Dr. Postovoit provided no substantive reasoning for discounting the evaluation by Dr. Khaleeq. His one-page written evaluation simply states that "there were no major limitations identified in the MSE" (*see* Tr. 149). Even defendant admits that neither the ALJ nor the state consultant clarified what aspects of the MSE they felt directly contradicted Dr. Khaleeq's opinions (*see* ECF No. 15, p. 10 ("It is not, however, clear what aspects of the mental status examination the ALJ felt directly conflicted with Dr. Khaleeq's opinion regarding Plaintiff's ability to interact with the public, or to complete a workday without interruption from her current psychiatric condition") (*citing* Tr. 22, 215-16)). The brief, conclusory opinion of the state agency reviewing psychologist is insufficient to provide substantial evidence in support of the ALJ's decision. *See Widmark v. Barnhart*, 454 F.3d

ORDER ON PLAINTIFF'S COMPLAINT - 6

1063, 1066, 1066 n.2 (9th Cir. 2006) ("brief, conclusory opinion of the state agency reviewing physician" is insufficient to provide specific legitimate reasons for rejecting an examining physician's opinion) (*quoting Lester, supra*, 81 F.3d at 831).

Because the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Khaleeq's opinion, this matter must be reversed.

Contrary to plaintiff's assertion, this Court need not credit Dr. Khaleeq's opinion as true and direct the Administration to immediately award benefits. Although that may be the case in some circumstances (*see Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995); *Garrison v. Colvin*, __ F.3d __ No. 12-15103, 2014 WL 3397218 (9th Cir. July 14, 2014)), such is not the case when the ALJ had contrary opinions by a state agency consultant and other evidence that the ALJ must consider in order to resolve conflicts in the evidence. For instance, the ALJ here specifically found that plaintiff's activities, including her ability to paint her kitchen, demonstrated that plaintiff was "capable of sustaining basic work activities" (Tr. 21 (*citing* Tr. 480)). These are inconsistencies in the record that this Court should not attempt to resolve.

Generally, when the Social Security Administration does not determine a claimant's application properly, "'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). However, the Ninth Circuit has put forth a "test for determining when [improperly rejected] evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th

Cir. 2000) (*quoting Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). It is appropriate when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Harman, supra,* 211 F.3d at 1178 (*quoting Smolen*, *supra*, 80 F.3d at 1292).

Here, as noted above, outstanding issues must be resolved. *See Smolen, supra*, 80 F.3d at 1292. The ALJ must reevaluate Dr. Khaleeq's conclusions, using the correct standard of review. Since there is some evidence to contradict his conclusions, the ALJ is charged with the responsibility of resolving those conflicts.

(2) **Whether or not the ALJ's residual functional capacity ("RFC") finding is incomplete, as it did not include the need for hourly bathroom breaks as identified by Dr. Pfeiffer**.

Dr. Peter Pfeiffer, M.D. performed a physical examination of plaintiff on behalf of the State of Washington (*see* Tr. 208-11). He concluded that plaintiff's gastroparesis, resulted in her frequent toileting, requiring breaks every "hour continuously during the day" (Tr. 211). The ALJ acknowledged Dr. Pfeiffer's opinion (Tr. 21), but did not include this limitation in his RFC (Tr. 16). Defendant acknowledges that the ALJ did not reject Dr. Pfeiffer's opinion that plaintiff needed to take frequent bathroom breaks (ECF No. 15, p. 11), but argues that the ALJ's observations regarding plaintiff's activities of daily living were sufficient to provide a specific and legitimate reason to object Dr. Pfeiffer's opinion (*id.*).

According to the Ninth Circuit, "[l]ong-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking." *Bray v. Comm'r of SSA*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (*citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (other citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency") (*citing Chenery Corp, supra*, 332 U.S. at 196).

Because the ALJ failed to provide a specific and legitimate reason for rejecting Dr. Pfeiffer's limitation regarding frequent use of toilet, this constituted legal error. This Court will not attempt to intuit what the ALJ was thinking when he failed to account for this limitation. Because this limitation was not included in plaintiff's RFC, this error is not harmless (*see Molina, supra,* 674 F.3d at 1117-22; *see also,* 28 U.S.C. § 2111; *Shinseki v. Sanders,* 556 U.S. 396-407 (2009)).

On the other hand, because the record reveals at least one instance where plaintiff presented to the emergency room and did not demonstrate the symptoms of frequent toileting, this apparent conflict must be resolved by the ALJ (*see e.g.,* Tr. 256).

For the above reasons, this matter must be remanded to the ALJ for further consideration.

Finally, because the ALJ's consideration of plaintiff's credibility and the lay testimony depends in part, on a proper evaluation of the medical evidence, and because the Court already has concluded that this matter must be reversed and remanded for

1 | further consideration of the medical evidence, this Court need not further review alleged
2 | errors regarding those findings and, instead, instructs the ALJ to reevaluate the record as
3 | a whole.

## CONCLUSION

Based on these reasons and the relevant record, the Court **ORDERS** that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further proceedings consistent with this Order.

**JUDGMENT** should be for plaintiff and the case should be closed.

Dated this 15th day of September, 2014.

_____
J. Richard Creatura
United States Magistrate Judge